IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TRACY ANDERSON,

|  |  |  |
|---|---|---|
| | Plaintiff, | OPINION AND ORDER |
| v. | | |
| | | 13-cv-561-wmc |

CAPT. OLSON, SGT. DAHLKE and OFFICER
LEVEY,

                         Defendants.

After granting summary judgment to defendants on *pro se* plaintiff Tracy Anderson's First Amendment free exercise claim, the court gave Anderson a chance to respond to defendants' motion for summary judgment on his remaining Fourteenth Amendment due process claim, since defendants did not seek summary judgment on that claim until their reply brief. (Op. & Order 6/4/15 (dkt. #45).) Anderson has since responded to defendants' motion. (Dkt. #36.) Below, the court identifies a number of reasons it appears Anderson's due process claim must fail under recent, straightforward Seventh Circuit case law. Accordingly, defendants' motion for summary judgment on plaintiff's last remaining claim will be granted.

UNDISPUTED FACTS[1]

Anderson was transferred to the segregation unit at Waupun Correctional Institution ("WCI") on May 6, 2013. On May 9, 2013, when Anderson's property was inventoried,

---

[1] For purposes of this opinion and order, the court assumes familiarity with the facts as described in its first order and opinion on summary judgment, particularly with respect to the parties and the institutional policies regarding contraband property. (Dkt. #45.) The following, undisputed facts relate specifically to Anderson's remaining due process claim.

Correctional Officer Feucht determined that Anderson had thirty-one books and publications over the limit for the general population, and fifty-two over the limit for segregation.

At the times relevant to this lawsuit, defendant Levey, the property segregation officer, was responsible for delivering an inmate's property and property documents to the segregation unit. Anderson confirms that Levey noted "ICI" on the DOC-237 form dated May 9, 2013, which indicates that Anderson stated his intent to file an offender complaint regarding his over-the-limit property. Moreover, Anderson admits that he initially decided to file an inmate complaint before deciding to mail out some of his books. (Aff. of Tracy Anderson (dkt. #35) ¶ 13.) Nevertheless, the form also includes the note, "refused to sign," in a blank space near another notation with the same date as the form. (Exs. (Dkt. 1-1) ECF 21.)

The parties dispute whether Anderson ever notified defendants that he wanted them to mail his contraband property. Defendants further deny that Anderson ever informed anyone else at WCI that he wanted to mail out his over-the-limit property, either orally or by submitting the required forms, before it was destroyed consistent with established policy.

Anderson, on the other hand, asserts that he sent a form to defendant Olson to request that some of the books in his excess property be mailed out to family members. The record also contains just such a form, written by Anderson, making that very request, addressed to Captain Olson, and dated May 15, 2013. (Aff. of Linda G. Alsum-O'Donovan Ex. 107 (dkt. #31-3) at 16.) However, Olson specifically denies that he ever received the request slip. Moreover, the form contained in the record does not have any indicia that Olson received it; instead, the form is stamped to indicate that it was "Inmate Submitted" on

July 1, 2013, and attached as an exhibit to the inmate complaint that Anderson filed after his property was destroyed.  (*Id.*)

It is undisputed, however, that Anderson had a balance of $15.21 in his trust account statement on May 15, 2013, after two deposits of $12 and $13 that same day.  While there is no evidence as to how much money Anderson would have needed in his account to mail out his property, the parties also agree that he had enough money in his account to mail his property at some point before it was destroyed.

Even if Olson received Anderson's request slip, he still would have needed to submit a disbursement form authorizing the release of funds from his account for the purpose of mailing out his property.  Anderson asserts that after he sent the request slip to Captain Olson, Officer Levey returned to his cell in segregation on one of his daily rounds to ask him what shipping address he wanted used for his property.  (Aff. of Tracy Anderson (dkt. #47) ¶ 3.)  Anderson claims that he then filled out the necessary forms for shipping when Officer Levey returned to his cell, *including* a disbursement form.[2]

Anderson also attached two other request forms to his complaint, which reference a request to have his property mailed out.  One form, addressed to Olson, is dated June 19, 2013, and reports Anderson's concern that his mother had still not received the property he wanted mailed.  (Exs. (dkt. #1-1) ECF 7-8.)  The other form is addressed to defendant Dahlke and dated June 25, 2013.  (Exs. (dkt. #1-1) ECF 11-12.)  That form references a conversation Anderson claims to have had with Sergeant Dahlke on June 20, 2013, during

---

[2] Anderson specifically represents that he completed the disbursement form on the same day he signed the DOC-237 property disposition form, which Levey had marked "Refused to Sign" and dated it "May 9, 2013," next to Anderson's signature.  This is the same date on which Levey noted that Anderson intended to file a complaint.  Further, Anderson explains that "they didn't change [the] date."  (Aff. of Tracy Anderson (dkt. #47) ¶ 8.)

which Dahlke apparently told Anderson that he did not have enough money to mail his property, but that Dahlke would hold it until Anderson had sufficient funds in his account. (*Id.* at ECF 11.)  As with the other request slip, however, neither of these forms has any markings indicating that they were actually received by any of the defendants or by any other DOC official.

Dahlke ultimately disposed of Anderson's contraband property on June 20, 2013. The DOC-237 property disposition form indicates that Anderson's property was destroyed on that date because of "No Contact."  (Aff. of Linda G. Alsum-O'Donovan Ex. 107 (dkt. #31-3) ECF 18.)  The parties agree that June 20 was more than thirty days after Anderson's excess property was originally confiscated, so the disposal would be authorized by WCI policy *if* Anderson never actually indicated to the defendants or someone else in the WCI property department that he wanted to mail his property.

After the disposal of his property, Anderson sent Captain Olson a request form on June 26, 2013, complaining that Dahlke had destroyed his property *despite* Anderson specifically telling Dahlke that he wanted to mail it to his family.  This request form does indicate that Olson received it and responded that contraband property is held for thirty days, after which it is destroyed.  Anderson then filed an offender complaint concerning his property, which was ultimately rejected.

The DOC investigation into Anderson's complaint concluded that "Anderson did not have any funds to send property out when he talked with Officer Levey," adding that when Anderson "talked with Sgt. Dahlke, when he finally did have funds, the property was already disposed after being held over 30 days."  (Aff. of Linda G. Alsum-O'Donovan Ex. 107 (dkt. #31-3) at 6.)

OPINION

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the initial burden is met, for an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  To survive summary judgment, the nonmoving party must produce "evidence . . . such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

I.   **Due Process Claim**

   **A.  Reasonable Inferences**

The court allowed Anderson's claim for deprivation of property in violation of the Due Process Clause of the Fourteenth Amendment to proceed past screening.  To prevail on a procedural due process claim, a plaintiff must demonstrate that he (1) had a cognizable property interest, (2) suffered a deprivation of that interest, and (3) was denied due process. *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004).  Defendants do not contest that Anderson was deprived of a cognizable property interest when his books were destroyed.  *See Caldwell v. Miller*, 790 F.2d 589, 608 (7th Cir. 1986) ("It is beyond dispute that Caldwell had

5

a property interest in his hardbound books."); *cf. Kimbrough v. O'Neil*, 545 F.2d 1059, 1061 (7th Cir. 1976) (prisoner stated a claim under the Fourteenth Amendment when a county jail deputy took a ring from him and did not return it upon transfer to federal custody).

In moving for summary judgment, defendants assert that there is no evidence in the record to support Anderson's claim that: (1) Dahlke destroyed his property despite Anderson giving notice that he wanted it mailed instead; or (2) Anderson submitted the required forms timely. This is not so. First, Anderson states in his sworn affidavit that he submitted the forms required for him to release funds from his account to mail his property when Levey came by his cell to determine to what address Anderson wanted his property sent. Again, according to Anderson, Levey visited his cell after he sent a notice to Olson stating a desire to have his excess property mailed to family.

Although the notice Anderson claims to have sent to Olson does not have any marking indicating that a prison official actually received it, the DOC-237 form in the record contains Anderson's signature. That signature at least arguably supports Anderson's account that Levey visited his cell a second time to get an address after first notifying Anderson about his contraband property, since: (1) the form also has a note indicating that Anderson refused to sign it (presumably made when Levey first brought the form to Anderson's cell on May 9, 2013); and (2) Anderson explains that Levey did not change the date next to Anderson's signature when Levey came by his cell that second time.

Second, while the other two notices in the record addressed to Olson and Dahlke, respectively, likewise have no marking indicating that the intended addressees or any other prison official actually received them, combined with Anderson's testimony that he actually submitted the forms, the dates on both notices also arguably support Anderson's claim that

6

he notified the defendants about his choice to mail his excess property.   Similarly, the disposition of Anderson's complaint regarding the disposal of his property, which claimed that Anderson actually spoke with Levey and Dahlke about mailing his property, could support his assertion that he notified both of them of his decision before Dahlke disposed of his property.

Drawing all reasonable inferences in favor of Anderson as the nonmoving party, therefore, the record *could* support a finding that Anderson notified the defendants that he wanted some of his contraband property mailed to family members as early as May 15, well before the thirty-day time period after which prison officials were authorized to destroy it. Moreover, while it is unclear whether the $15.21 Anderson had in his trust account statement on May 15 was enough to mail all his excess books on that very day, there is also no dispute that he had enough money in his account to mail his property before the thirty-day deadline.   Accordingly, the record is not so one-sided that Anderson cannot persuade a reasonable jury that he notified defendants that he wanted to mail his property before that deadline, filled out the appropriate forms to carry out that request, and had enough money to pay for the timely mailing of the books.

### B.  Seventh Circuit Case Law

Defendants make no other meaningful argument undermining the reasonableness of these inferences for purposes of plaintiff's due process claim.   Even so, Seventh Circuit case law makes clear that not all circumstances involving prison officials destroying an inmate's property will give rise to a constitutional violation.   In particular, the Seventh Circuit recently provided a comprehensive analysis of the law governing procedural due process claims in *Leavell v. Illinois Department of Natural Resources*, 600 F.3d 798 (2010):

"[I]n evaluating what process satisfies the Due Process Clause," one of our sister circuits has explained, "'the Supreme Court' has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'" *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996); *see also Strasburger v. Bd. of Educ., Hardin County Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 358 (7th Cir. 1998) ("To show a failure of due process, a plaintiff might show that state procedures as written do not supply basic due process or that state officials acted in a[] 'random and unauthorized' fashion in depriving the plaintiff of his protected interest." (quoting *Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). If the plaintiff alleges that "the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Rivera-Powell*, 470 F.3d at 465. "Under those circumstances, 'the availability of post-deprivation procedures will not *ipso facto*, satisfy due process.'" *Id.* (quoting *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880)).

By contrast, "[w]hen the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy." *Id.* Thus, we have stated that, for a plaintiff alleging a procedural due process claim based on "random and unauthorized" conduct of a state actor, the plaintiff must either avail herself of state post-deprivation remedies "or demonstrate that the available remedies are inadequate." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S. 327, 339-40, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). If the plaintiff has not availed herself of state remedies, she cannot "'state a valid procedural due process objection . . . if [she] does not include a challenge to the fundamental fairness of the state procedures.'" *Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996) (quoting *Doherty*, 75 F.3d at 323).

*Id.* at 804-05.

Since Anderson's due process claims appear to challenge defendants' seemingly random and unauthorized acts in ignoring his requests to have his property mailed, then to

maintain a constitutional claim, he must challenge the fundamental fairness of the state procedures. *See Hamlin*, 95 F.3d at 583. Similarly, he must also challenge the adequacy of postdeprivation remedies, because in those circumstances the plaintiff cannot show that predeprivation due process was wanting, since "[i]t would do no good for the State to have a rule telling its employees not to lose mail by mistake, and it 'borders on the absurd to suggest that a State must provide a hearing to determine whether or not a corrections officer should engage in negligent conduct.'" *Zinermon v. Burch*, 494 U.S. 113, 137 (1990) (quoting *Daniels*, 474 U.S. at 342 n.19 (Stevens, J., concurring)). It certainly follows that "a rule forbidding a prison guard to maliciously destroy a prisoner's property would not have done any good; it would be absurd to suggest that the State hold a hearing to determine whether a guard should engage in such conduct." *Id*. at 137.

Even more recently, the Seventh Circuit laid out three guiding principles for determining whether conduct should be deemed "random and unauthorized": (1) the conduct is "unforeseeable misconduct that cannot practicably be preceded by a hearing"; (2) misconduct enabled by a broad delegation of discretion is not random and unauthorized; and (3) "an official's subversion of established state procedures" is not random and unauthorized. *Armstrong v. Daily*, 786 F.3d 529, 543 (7th Cir. 2015). The parties do not address whether Anderson is challenging random and unauthorized conduct by defendants, but the record on summary judgment confirms that DOC policy obviously would not permit them to disregard an inmate's request to have his contraband books mailed to family provided the inmate submits the required disbursement forms for his inmate trust account and has sufficient funds in that account, as plaintiff alleges. Likewise, DOC policy gives defendants no apparent discretion to decide whether or which property should be mailed out at the request

of an inmate under those conditions.  Accordingly, plaintiff's due process challenge is to random and unauthorized conduct by defendants and not conduct based on established state procedures.

Even so, plaintiff's due process claim *might* survive summary judgment if he could instead establish the fundamental unfairness of the state procedures governing destruction of contraband property.  In his response to defendant's motion, however, plaintiff does not even try to do so.  Reading plaintiff's submissions generously, he does not argue that the pre-deprivation procedures afforded inmates by DOC are constitutionally inadequate to satisfy their due process rights, but rather faults defendants for failing to *follow* two provisions of Division of Adult Institutions ("DAI") Policy 309.20.03.  Plaintiff cannot maintain a due process claim simply by showing that prison officials failed to adhere to the applicable administrative rules.  *See Guarjardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010) ("[A] violation of state law is not ground for a federal civil rights suit.").[3]

As previously mentioned, plaintiff's due process claim is then doomed unless he can demonstrate that post-deprivation remedies here are inadequate.  *Parratt*, 451 U.S. at 541; *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (applying *Parratt* doctrine to intentional deprivations of property by state officials); *Kimmons v. Waupun Property Staff*, 1 F. App'x 496, 498-99 (7th Cir. 2001) (noting with respect to the plaintiff's claim that prison officials destroyed his property that "[w]e have previously held that Wisconsin's post-deprivation

---

[3] While it is unclear on the face of the policy that prison officials *must* give inmates notice of the titles of books confiscated as contraband, as well as notice that the confiscated property will be destroyed in thirty days absent contrary arrangements by the inmate.  Even if prison officials were required to give that notice to inmates, however, defendants' failure to do so in this case did not deny this plaintiff due process because, under the facts as he alleges them, he not only knew that his books were confiscated as contraband well before they were destroyed, but submitted the required forms to have them sent to family members.

procedures are adequate"). A post-deprivation remedy is inadequate if it "readily can be characterized as inadequate to the point that it is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the [F]ourteenth [A]mendment." *Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir. 1990).

Here, plaintiff makes no such argument. Moreover, there is *no* indication that any of plaintiff's property could not be replaced in a post-deprivation hearing, much less that this would have been obvious to defendants. Accordingly, plaintiff has no viable due process claim.

ORDER

IT IS ORDERED that:

1) defendants' motion for summary judgment on plaintiff's remaining due process claim is GRANTED; and

2) the clerk of court is directed to enter final judgment and close this case.

Entered this 6th day of January, 2017.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge

11